FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAY 23 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────X

KENNETH BROWN,

    Plaintiff,

- against -

NEW YORK CITY DEPT. OF CORR"S;
COMMISSIONER, JOSEPH PONTE, in his
Official Capacity; THE CITY OF NEW YORK;
SUPT. OF (R.N.D.C.); A. PRESLEY OF
(R.N.D.C.); C.O. JOHN DOE; UNKNOWN
OFFICER (JOHN DOE); and CAPTAIN
HARRIS,[1]

    Defendants.
──────────────────────────────X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
16-CV-6077 (CBA) (LB)

**AMON, United States District Judge:**

Plaintiff Kenneth Brown ("Brown"), currently incarcerated at Wyoming Correctional Facility, brings this pro se § 1983 action against Defendants New York City Dept. of Corr"s ("DOC"); Commissioner, Joseph Ponte ("Ponte"); the City of New York (the "City"); the Superintendent of RNDC; Warden A. Presley of RNDC ("Presley"), C.O. JOHN DOE ("Doe I"), Unknown Officer (JOHN DOE) ("Doe II"), and Captain Harris ("Harris"). Brown asserts violations of the United States Constitution and New York tort law. He alleges that, while he was detained at RNDC pending trial, jail guards twice sprayed him with a chemical substance, and that he suffered injuries for which he did not receive adequate medical care. Pursuant to 28 U.S.C.

---

[1] The City of New York (the "City") is not named in the caption but is included in the list of defendants. (D.E. # 1 ("Compl.") at 1–2.) Conversely, the New York City Department of Correction (the "DOC") and "Supt of R.N.D.C.," which the Court construes as the Superintendent of RNDC (Robert N. Davoren Complex in Rikers Island), are named in the caption but not in the list of defendants. Although he does not mention them in the caption or list of defendants, Plaintiff also makes allegations against C.O. JOHN DOE, Unknown Officer (JOHN DOE), and Captain Harris. In light of Plaintiff's pro se status, the Court liberally construes the complaint as naming all of these parties. The Clerk of Court is directed to amend the caption as stated above.

1

§ 1915, the Court grants Brown's request to proceed in forma pauperis. For the reasons set forth below, the Court upholds the Fourteenth Amendment claims against Doe I, Doe II, and Harris, as well as the negligence claims against all Defendants. The Court dismisses the other federal and state claims but grants Brown leave to file amended pleadings within 30 days.

## BACKGROUND

Brown alleges that RNDC correctional officers violated the Constitution and state law on January 25, 2016, and February 5, 2016, when they exposed him to an "MK-9 aerosol chemical agent." (Compl. at 2.) A DOC directive regulates the use of chemical agents at Rikers Island. Brown attaches the revised version of the directive, effective April 27, 2012, to his Complaint. (Id. at 12.) Brown alleges that the officers who sprayed the chemical agent and those who reacted to its use failed to abide by the directive during the alleged incidents.

Brown claims that on January 25, 2016, at approximately "11:45 a.m. or 12:00 p.m.," there were two fights in the hallway at Rikers Island, the second of which led to Doe I spraying the MK-9 chemical on an inmate "who was next to" Brown four to five times. (Id. at 3, 7.) He claims that he was exposed to the spray as a result of the incident. Brown and the other inmates who inhaled the chemical spray were placed in "clinic holding pens," where they had difficulty breathing and had chest pain. (Id. at 4, 7.) Brown claims that he suffered physical injuries and that his request for medical treatment was denied. (Id. at 3–4.)

On February 5, 2016, "at or around 9:00am," Brown was again subjected to a chemical agent when Doe II used a "strong" spray near the clinic area in which he and others were waiting. (Id. at 3–4, 6.) Brown and the other inmates began to choke, cough, and sneeze, and one inmate passed out. (Id. at 3.) Brown asked Harris to turn on a fan, but he would not. (Id. at 4.) Brown

2

alleges that he still has pain in his eyes, that he gags and sneezes at night, and that he cannot sleep owing to symptoms of the chemical exposure. (Id. at 3–4.)

Based on the two incidents, Brown asserts negligence, intentional infliction of emotional distress, and violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (See id. at 3, 9.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Upon review, the Court shall dismiss a detainee's complaint sua sponte if the Complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that sua sponte dismissal of frivolous prisoner complaints is not only permitted but mandatory); see also Tapia-Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir. 1999). Furthermore, 28 U.S.C. § 1915(e)(2)(B) provides similar dismissal authority to this Court in an in forma pauperis action.

The Court must construe pro se pleadings liberally, particularly when they allege civil rights violations. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–93 (2d Cir. 2008). Courts must read pro se pleadings with "special solicitude" and interpret them to raise the "strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–76 (2d Cir. 2006).

Still, the Complaint must plead enough facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although the Court does not require "detailed factual allegations," "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). The Complaint fails to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

## DISCUSSION

### I. Federal Claims

Brown has asserted constitutional claims under § 1983. To sustain a claim brought under § 1983, he must allege that (1) "the conduct complained of . . . [was] committed by a person acting under color of state law," and (2) "the conduct complained of must have deprived . . . [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

#### A. DOC

Brown names the DOC, an agency of the City, as a Defendant. City agencies, including the DOC, do not have a legal identity separate and apart from the municipality and cannot sue or be sued. See Jenkins v. City of N.Y., 478 F.3d 76, 93 n.19 (2d Cir. 2007); Bailey v. N.Y.C. Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996). The Court dismisses the claims against the DOC. 28 U.S.C. §§ 1915(e)(2)(B)(ii); 1915A(b)(1).

#### B. The City

With respect to the City, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury,

542 F.3d 31, 36 (2d Cir. 2008) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690–91 (1978)). The fifth element reflects the principle that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). Rather, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Brown has failed to make any non-conclusory allegations that would support an inference that an official policy or custom of the City's caused a violation of his federally protected rights. Accordingly, the Court dismisses the § 1983 claims against the City for failure to state a claim.

### C.   Ponte, the Superintendent of RNDC, and Presley

Brown fails to show that Ponte, Presley, and the Superintendent of RNDC—who are supervisors in the DOC or at RNDC—had personal involvement in the alleged misconduct. A § 1983 claim must allege the personal involvement of any individual Defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Brown may establish personal involvement by offering evidence of direct participation in the challenged conduct, or evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003). "A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." Sturgis v. DeMarco, No. 13-CV-2125 (SJF), 2013 WL 2649842, at *3

(E.D.N.Y. June 7, 2013). Moreover, supervisory status alone is not sufficient to impose liability. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).

Even construing the Complaint liberally, the Court finds that Brown has not alleged any facts plausibly showing Ponte, Presley, and the Superintendent of RNDC to have any involvement in the alleged deprivation of Brown's constitutional rights. Because Brown has failed to allege specific facts demonstrating how the remaining Defendants were involved in the conduct challenged in the Complaint, the Court dismisses the § 1983 claims against them.

### D. Doe I, Doe II, and Harris

Finally, Brown properly alleges Fourteenth Amendment claims against Does I and II, who allegedly exposed Brown to chemicals, and Harris, who allegedly decline to turn on a fan to disperse the chemicals from the prison area. However, Brown has not plausibly alleged other constitutional claims against the three Defendants.

The Court finds that the Fourteenth Amendment claims against Doe I, Doe II, and Harris may proceed. "A pretrial detainee's claim for deliberate indifference is evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, as '[p]retrial detainees have not been convicted of a crime and thus "may not be punished in any manner—neither cruelly and unusually nor otherwise."'"[2] Davis v. McCready, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" Darnell, 849 F.3d at 29 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). Because the allegations here would give rise to Eighth Amendment claims against Doe I, Doe II, and Harris, the Court finds that Brown plausibly has alleged Fourteenth Amendment claims.

---

[2] For this reason, Brown's claims are not properly Eighth Amendment ones, although he invokes the provision in his pleadings.

6

Under the Eighth Amendment, "[t]he standard for deliberate indifference includes a subjective component and an objective component." Vogelfang v. Capra, 889 F. Supp. 2d 489, 505 (S.D.N.Y. 2012). With respect to the subjective component, Defendants must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm [to inmate health or safety] exists, and [they] must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). With respect to the objective component, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). As stated above, Doe I allegedly sprayed the MK-9 chemical near Brown, and Doe II purportedly used a "strong" chemical spray near him. (Compl. at 3–4, 6–7.) Construed liberally, the allegations suggest that Brown had not performed any conduct warranting potential use of the spray. After Doe I's spraying, Brown apparently suffered physical injuries and asked for medical treatment. (Id. at 3–4.) After Doe II's spraying, Brown and the other inmates allegedly began to choke, cough, and sneeze, and one inmate passed out. (Id. at 3.) Brown directly asked Harris to turn on a fan, but Harris declined to do so. (Id. at 4.) During both incidents, the three Defendants' actions sufficiently satisfied both prongs of the Eighth Amendment analysis. Brown plausibly alleges that all three Defendants were on sufficient notice of the chemical spray use and the risk of substantial harm it may cause to the prisoners. "Courts in this Circuit have repeatedly held that a prison official's use of . . . chemical spray against a compliant prisoner satisfies both the subjective and objective elements of an Eighth Amendment excessive force claim; the subjective element is satisfied in such cases because spraying a compliant prisoner with [the spray] cannot be characterized as an attempt to maintain or restore discipline, and the objective element is satisfied when a prisoner alleges that he suffered injuries beyond the immediate discomfort that results from

7

being sprayed with mace." Parsons v. City of N.Y., No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) (collecting cases). Brown alleges that he still has pain in his eyes, that he gags and sneezes at night, and that he cannot sleep because of symptoms resulting from the chemical exposure. (Id. at 3–4.) These allegations plausibly would make out Eighth Amendment claims against Doe I, Doe II, and Harris if Brown had been a prisoner at the time. Accordingly, Brown as a pretrial detainee plausibly alleges Fourteenth Amendment claims against them.

However, although Brown invokes the Fourth, Fifth and Sixth Amendments in his pleadings, he fails plausibly to allege claims under those provisions. The pleadings do not plausibly allege a search or seizure, and therefore he fails to make a Fourth Amendment claim. With no allegations of a taking or a deprivation by a federal government actor, Brown also fails to assert any Fifth Amendment claim. Finally, Complaint also fails to make any allegations suggesting that the three Defendants impeded Brown's Sixth Amendment rights to access to the courts, right to counsel, or related trial rights. Thus, those claims fail as well.

Therefore, the Court upholds the Fourteenth Amendment claims against Doe I, Doe II, and Harris but dismisses the Fourth Amendment, Fifth Amendment, and Sixth Amendment claims against the three Defendants.

## II.  State Claims

Here, Brown has asserted negligence claims and intentional infliction of emotional distress ("IIED"). The Court addresses each set of claims in turn.

With respect to negligence, the City and its jail officials, "[h]aving assumed physical custody of" detainees, have a "duty of care to safeguard" them against "risks of harm that are reasonably foreseeable." Sanchez v. State of N.Y., 784 N.E.2d 675, 678 (N.Y. 2002). "[F]oreseeability is defined . . . by actual or constructive notice—by what the [City] knew or had reason to know, what the [City] is or should be aware of." Id. at 680 (emphasis and internal

citations and quotation marks omitted). Brown need not allege that a particular defendant "was present and failed to prevent" the chemical use against him, or that the defendant "had specific prior knowledge that [he] was particularly vulnerable" to chemical use. Villar v. Howard, 64 N.E.3d 280, 283 (N.Y. 2016).

In light of the surviving Fourteenth Amendment claims, the Court declines to dismiss the negligence claims against Defendants, who all are "prescribed, by law, to safely keep" detainees at RNDC, id. The Court cannot say at this point that Doe I and Doe II took reasonable care to spray the chemicals in the area near Brown, or that Harris exercised reasonable care in declining to turn on the fan. Indeed, Brown attaches city regulations suggesting that city jail officials must "attempt[] . . . to resolve" issues without using chemical sprays, "[e]nsure all contaminated persons (inmates and staff) receive immediate medical treatment," and "[r]emove [sprayed] individual(s) from the contaminated area to fresh air or a fan where possible." (Compl. at 21, 25, 27.) And the Court cannot say at this point that the other Defendants lacked constructive notice of the conduct by Doe I, Doe II, and Harris. At this point, the Court finds that the negligence claims against all Defendants should proceed.

However, the Court dismisses the IIED claims. IIED claims are "highly disfavored" under New York law. Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014). Brown fails plausibly to show that Defendants' conduct against him is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Chanko v. Am. Broadcasting Cos., 49 N.E.3d 1171, 1178 (N.Y. 2016). Moreover, Brown fails to provide sufficient allegations plausibly implying that Defendants had the requisite intent in their actions. See Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993) (requiring, in an IIED claim, evidence of "intent to cause, or disregard of a substantial probability of causing, severe emotional distress"). Therefore, Plaintiff fails to plead IIED claims, and the Court dismisses them.

### III. Leave to Amend

In light of Brown's pro se status, the Court grants him leave to amend the dismissed claims. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated." (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999))). Brown must file an Amended Complaint no later than June 21, 2018. Brown is advised that the Amended Complaint will completely replace the original Complaint.

Should Brown file an Amended Complaint, he must satisfy the minimal filing requirements of Rule 8 of the Federal Rules of Civil Procedure, providing each Defendant with notice of the claims against them and a short, plain statement of the relevant facts supporting his claim or claims. Brown must provide facts pertinent to each claim and cannot rely on generalized allegations of misconduct. If Brown elects to file an Amended Complaint, he should list specifically what injury he suffered, when and how it occurred, and who was responsible for it. Conclusory allegations are not sufficient. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57, 570).

Brown also must name the individuals personally involved as Defendants. If he cannot identify the Defendants, he may designate him/her as John/Jane Doe and provide a brief description of each individual. To aid Brown with this task, the Court respectfully directs the Clerk of Court to provide him with an inmate "Complaint for Violation of Civil Rights" form.

### CONCLUSION

For the reasons set forth above, the Court dismisses all federal claims except the Fourteenth Amendment claims against Doe I, Doe II, and Harris. The Court upholds the negligence claims but dismisses the IIED claims against Defendants. The Court also grants Brown leave to submit amended pleadings no later than June 21, 2018. The Court respectfully DIRECTS the Clerk of

Court to provide Brown with an inmate "Complaint for Violation of Civil Rights" form. If Brown elects to file an Amended Complaint, the pleadings must provide facts giving rise to each of his claims against Defendants.

The Court respectfully DIRECTS the Clerk of Court to amend the caption as reflected on the first page of this Memorandum and Order. The Court also respectfully DIRECTS the Clerk of Court to issue summons for Defendants named in the Complaint and the United States Marshals Service, without prepayment of fees, to serve on Defendants the Complaint, (see D.E. # 1); the summons; and this Memorandum and Order. A copy of this Memorandum and Order also shall be served on the Special Federal Litigation Division of the New York City Law Department. The Court respectfully REFERS the case to the Honorable Lois Bloom, United States Magistrate Judge, for pretrial supervision. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith, and the Court denies in forma pauperis status for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: May 23, 2018
Brooklyn, New York

/S/ Judge Carol Bagley Amon
_____
Carol Bagley Amon
United States District Judge